IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FELIX CORNEJO, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHICAGO TRANSIT ) <br> AUTHORITY, ) <br> ) <br> Defendant. ) <br> ) <br> ) <br> ) | No. 09 C 7403 <br><br> Magistrate Judge <br> Maria Valdez |

# MEMORANDUM OPINION AND ORDER

Plaintiff Felix Cornejo's complaint alleges that Defendant Chicago Transit Authority unlawfully discriminated against him by terminating his employment on the basis of national origin in violation of Title VII. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The matter is now before the Court on Defendant's Motion for Summary Judgment [Doc. No. 50]. For the reasons below, Defendant's Motion for Summary Judgment is granted.

I. **Background Facts**[1]

The following facts are recounted in the light most favorable to the Plaintiff, with relevant disputes noted. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 299–300 (7th Cir. 2011). Defendant Chicago Transit Authority ("CTA") hired Plaintiff Felix Cornejo ("Cornejo") as a part-time bus operator on February 5, 2007. Def.'s L.R. 56.1 Statement of Undisputed Facts ("Def. Facts") ¶ 2. Probationary bus operators have a five month probationary employment period with the first 25-27 days of their employment devoted entirely to training and instruction on bus operations. *Id.* ¶ 4. If a probationary bus operator is unable to satisfactorily complete his or her training and instruction within that initial 25-27 day time period, the operator is administratively separated from employment. *Id.*

Cornejo's initial training and instruction was comprised of two phases. *Id.* ¶ 5. First, Cornejo received approximately two weeks of formal training on bus operations at the CTA's Chicago Avenue Training Center. *Id.* This training consisted of classroom instruction and wheel instruction on a CTA driving course under the supervision of a CTA bus instructor. *Id.* During this time, Cornejo received instruction on the fundamentals concerning safe operation of a CTA bus. *Id.* Cornejo had three exams during this period and received scores of 82.5 on "Fare Structure," 72 on "Standard Operating Procedures/General Information," and 87.5

---

[1] Unless otherwise noted, the following material facts are either undisputed or deemed admitted pursuant to Local Rule 56.1. See N.D. Ill. R. 56.1 (b)(3)(B) and (C).

on "Defensive Driving." Pl.'s Resp. to Def. L.R. 56.1 Stmt. of Facts and Pl's L.R. 56.1 Proposed Findings of Fact ("Pl. Facts") Part II, ¶ 6.

After the formal training phase was completed, Cornejo began the practice instruction phase which involved driving a bus on an actual CTA route with passengers under the supervision of a "bus instructor" (an experienced CTA bus operator familiar with the route.) Def. Facts ¶ 6. The bus instructor provides real-time instruction and critique of the probationary operator's performance. *Id.* His instructors commented that his performance was satisfactory for 10 out of his 13 practice sessions. Pl. Facts Part II, ¶ 7.

On February 20, 2007, Cornejo reported 35 minutes late to his practice instruction. Def. Facts ¶ 7. In order to maintain the route schedule, Cornejo's instructor had to leave without him, disrupting that day's training schedule. *Id.* After this incident, Marie Stewart, Manager of Bus Instruction at the CTA's Chicago Training Center, began monitoring Cornejo's performance. *Id.* ¶ 19. Stewart is an African-American female. *Id.* ¶ 3.

On February 26, 2007, Cornejo was assigned to operate the Belmont Avenue #77 bus route. *Id.* ¶ 8. Al Parry, a Caucasian male, was his assigned bus instructor. *Id.* During the course of the instruction ride, Parry observed Cornejo do several things contrary to CTA bus operations, including: (1) driving too fast while attempting to turn; (2) not "covering the brakes"; (3) departing from a bus stop with the bus doors open; and (4) inaccurately judging distances between objects. *Id.* ¶ 9.

3

After Cornejo and Parry had completed approximately one half of their route, they were joined by CTA Line Instructor Mary Konzal. *Id.* ¶ 11. Konzal, a Caucasian female, was responsible for going into the field to observe both the probationary employee and the assigned bus instructor to ensure that the instruction is consistent with CTA expectations. *Id.* ¶ 12. On four separate occasions, Konzal observed Cornejo pull away from bus stops with the doors of the bus open, a serious safety hazard. *Id.* ¶ 13. Konzal also observed Cornejo fail to watch for cars pulling out of parking spaces, and entering an intersection when the bus clearly would not clear the intersection before a light change. *Id.* Due to these performance deficiencies, Cornejo was sent back to the Forest Glen Garage for "special driving" instruction which involved remedial instruction on safe driving practices. *Id.*

After Cornejo was sent back to Forest Glen by instructors Parry and Konzal, Stewart spoke with Key Instructor Leonard Woolfolk about Cornejo's performance. *Id.* ¶ 20. Woolfolk, an African-American, confirmed that Parry and Kozal both observed unsafe driving behavior by Cornejo. *Id.* Stewart instructed Woolfolk to assign Cornejo to different routes in the hope that driving different routes with different instructors would correct Cornejo's performance issues. *Id.*

On March 2, 2007 Cornejo was assigned to operate the Foster Avenue #92 bus route. *Id.* ¶ 14. Ramon Rios, a Latino, was his assigned bus instructor. *Id.* During the bus ride, there were issues with the speed at which Cornejo was

4

driving.² *Id.* ¶ 15. Rios ordered Cornejo to return to the Forest Glen Garage.³ *Id.* ¶ 17. After returning to the Forest Glen Garage, Cornejo proceeded to his home in Harvey, Illinois. *Id.* ¶ 18. Once Cornejo arrived home, he received a telephone call from the Training Center instructing him to report to Stewart at the Chicago Avenue Training Center. *Id*⁴.

After Cornejo failed to complete his route with Rios, Stewart again spoke with Woolfolk. *Id.* ¶ 21. Woolfolk confirmed that Rios had reported experiencing the same problems previously related by Parry and Konzal – that Cornejo was an unsafe driver who resisted any attempts to be instructed on CTA bus operations. *Id.* During Stewart's meeting with Cornejo, she asked him about his drive with Rios and whether it was true that Cornejo was driving too fast and arguing with Rios

---

² The parties contest what transpired during the bus route. Rios claims that Cornejo was driving at a rate of speed faster than necessary, and after he instructed Cornejo to adjust his speed, Cornejo became argumentative and ignored his instruction. Def. Facts ¶ 15; Affidavit of Ramon Rios ¶ 3. Cornejo asserts that he did not begin driving at a speed higher than necessary; rather, Rios told him to drive faster and when he did slow down, Rios instructed him to increase his rate of speed to stay on schedule. Pl. Facts Part I, ¶ 15. Cornejo also denies arguing with Rios. *Id.*

³ The parties contest what occurred at the Forest Glen garage. Defendant contends that Manager Ron Woolfolk instructed Cornejo to report to Marie Stewart at the Chicago Avenue Center. Def.'s Facts ¶ Cornejo claims that Woolfolk did not instruct him to report to Marie Stewart but told him to go home. Pl. Facts, Part I, ¶ 18. Cornejo further claims that he tried to explain to two supervisors how Rios had treated him but neither supervisor helped him. Pl. Facts, Part II, ¶ 24.

⁴ The date of termination is contested. Defendant asserts that Cornejo was fired by Stewart on March 2, 2007 and sent him a letter of administrative separation. Def.'s Facts ¶ 2. Cornejo contends that he did not receive the letter and was not fired on March 2, 2007. Pl. Facts Part II, ¶27. Furthermore, Cornejo contends that he contacted the CTA several times to check on his employment status, and each time a person answered, they confirmed that he had not been fired. *Id.* at ¶28.

5

about how to drive a bus.[5] *Id.*¶ 23. Stewart gave Cornejo the option of resigning but he refused. *Id.* ¶ 23, 24. Afterwards, Cornejo was terminated from employment with the CTA. *Id.* ¶ 2. Cornejo believes that CTA set him up and assigned Rios, a Latino bus instructor, to immunize itself against a discrimination claim. Pl. Facts Part I, ¶ 29, 31.[6]

## II. Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all reasonable inferences in favor of the nonmovant. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001).

However, once the movant has carried its burden under Rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S.

---

[5] The parties dispute Cornejo's response to this question. Stewart claims that Cornejo responded angrily, in an insubordinate tone of voice, saying "I have a CDL [commercial driver's license] and I can get another job." Def. Facts ¶ 23. Cornejo denies that he responded in this manner. Pl. Facts Part I, ¶ 23.

[6] Although Cornejo admitted that nobody at CTA, other than Rios, outwardly discriminated against him during his employment, Cornejo asserts that all persons involved in the decision to terminate his employment discriminated against him because he is Latino. Pl. Facts Part I, ¶ 8. Additionally, Cornejo contends that Rios stated that he "hate[s] Spanish people [and does not] like white guys." Pl. Facts Part II, ¶ 13.

6

574, 586 (1986). The party opposing summary judgment must offer admissible evidence in support of his version of events, and hearsay evidence does not create a genuine issue of material fact. *McKenzie v. Ill. Dep't of Transp.,* 92 F.3d 473, 484 (7th Cir. 1996); *see Larimer v. Dayton Hudson Corp.*, 137 F.3d 497, 500 (7th Cir. 1998) ("'If the non-moving party bears the burden of proof on an issue, . . . that party may not rest on the pleadings and must instead show that there is a genuine issue of material fact.'") (citation omitted). "The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. . . . The nonmovant will successfully oppose summary judgment only when it presents 'definite, competent evidence to rebut the motion.'" *Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.*, 278 F.3d 693, 699 (7th Cir. 2002) (citations omitted).

"In considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies." *Pleniceanu v. Brown Printing Co.*, No. 05 C 5675, 2007 WL 781726, at *7 (N.D. Ill. Mar. 12, 2007) (citing *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 898 (7th Cir. 2003)); *see also Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("We will not scour a record to locate evidence supporting a party's legal argument."); *Knapp v. County of Jefferson*, No. 06 CV 4028, 2007 WL 496396, at *1 (S.D. Ill. Feb. 13, 2007) (denying summary judgment where defendant's brief

"contains no facts section and . . . fail[s] to point to the relevant portions of the record to establish the facts of this case").

In addition, "[c]onclusory allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact." *Hall v. Bodine Elec. Co.,* 276 F.3d 345, 354 (7th Cir. 2002). Similarly, affidavits or depositions based on speculation, rumor, or conjecture are not sufficient to defeat a properly supported motion for summary judgment. *Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 337 (7th Cir. 1991). Finally, the Court is "'not required to draw every conceivable inference from the record,'" *McCoy v. Harrison,* 341 F.3d 600, 604 (7th Cir. 2003) (citation omitted).

### III. Cornejo's Claims of Discrimination

Cornejo relies on the direct and indirect methods of proof in support of his national origin discrimination claim. Under the direct method, the focus is whether the evidence points directly to a discriminatory reason for the employer's action. *Ptasznik v. St. Joseph Hospital*, 464 F.3d 691, 695 (7th Cir. 2006) (citations omitted). Cornejo may present direct or circumstantial evidence to prove discriminatory motivation. *See Lewis v. City of Chicago*, 496 F.3d 645, 652 (7th Cir. 2007). Direct evidence proves the fact in question "without reliance upon inference or presumption." *Nichols v. S. Ill.Univ.-Edwardsville*, 510 F.3d 772, 781 (7th Cir. 2007). Circumstantial evidence allows the jury to infer intentional discrimination by

8

the decisionmaker. *Id.* Such evidence may include: (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext. *Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008).

Under the indirect method of proof, Cornejo must create a presumption of discrimination by establishing a *prima facie* case for discrimination. *Id.*; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). That presumption then shifts the burden to Defendant to provide a legitimate, nondiscriminatory reason for its actions. *Atanus*, 520 F.3d at 672. If Defendant can rebut Cornejo's prima facie case of discrimination, the burden then shifts back to Cornejo to show that Defendant's explanation is pretextual. *Id.*

### A. The Direct Evidence Method

Because Cornejo presents only circumstantial evidence to support his claim of discrimination, he can succeed in defeating Defendant's motion for summary judgment only if his evidence creates a "convincing mosaic" that would allow a jury to infer intentional discrimination. *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504

(7th Cir. 2004). Cornejo's circumstantial evidence consists of (1) his assertion that he was the only Latino in his training class and the only person that was fired from his training class, (2) the fact that Cornejo's last day of work was the day that Rios acted confrontationally towards him and spoke prejudicially against him, (3) the Defendant did not fire him on the spot, and (4) the Defendant's reasons for termination were merely pretextual. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 [hereinafter Pl.'s Brief] at 8-10 [Doc. No. 55].

Cornejo cites his first piece of evidence, the allegation that he was the only Latino in his training class and the only trainee to be fired, as support for showing Defendant's discriminatory intent. However, this evidence must be disregarded as it relies completely on speculation. A party cannot rely on speculation to create a genuine issue of material fact to defeat summary judgment. *Grube v. Lau*, 257 F.3d 723, 730 (7th Cir. 2001). In his own deposition, Cornejo confirmed that he was unaware if any of the other probationary bus drivers in his training class were still employed by the Defendant. Def's Facts ¶32. This deposition overrides any contrary statements made by Cornejo in his subsequent affidavit. *See Piscione v. Ernst & Young, LLP*, 171 F.3d 527, 532 (7th Cir. 1999) ("when a conflict arises between a plaintiff's own sworn deposition and his sworn affidavit, the deposition testimony overrides statements made in the affidavit."); *Beckel v. Wal-mart Assoc., Inc.*, 301 F.3d 621, 623 (7th Cir. 2002) ("affidavit . . . when offered to contradict the affiant's

deposition are so lacking in credibility as to be entitled to zero weight in summary judgment proceeding . . . "). Thus, Cornejo's assertion that he was the only one fired is mere speculation and not persuasive.

Cornejo's second piece of evidence also fails to point towards discriminatory intent on behalf of the Defendant. Cornejo argues that the fact that Rios acted prejudicially towards him on his last day of work constitutes evidence that Defendant intentionally discriminated against him. In order for Rios's discriminatory actions to be attributed to the Defendant, there must be evidence that Rios intended that his discriminatory act cause an adverse employment action, and Rios's act must have been a proximate cause of Cornejo's termination. *See Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1194 (2011).

Rios's actions fail to meet either criteria. Even if Rios did make the discriminatory remark towards Cornejo there is no evidence that Rios intended it to cause an adverse employment action. Although Cornejo alleges that Rios sent Cornejo back to the Forest Glen garage in retaliation for believing that Cornejo had telephoned a supervisor to complain about Rios, there is no evidence to support this speculation. *See Chiaramonte v. Fashion Bed Group, Inc.,* 129 F.3d 391, 401 (7th Cir. 1997) ("if the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed"). Cornejo also alleges that Rios repeatedly suggested that Cornejo should "go home" which

11

Cornejo interpreted to mean that he should quit his job. Even if Rios spoke those words and Cornejo correctly interpreted them, it is still not evidence that Rios intended that his actions would cause Cornejo to be fired.

Rios's actions also fail to meet the second criteria because there is no evidence that he was the proximate cause of Cornejo's termination. Cornejo has admitted that Stewart was the one to make the termination decision, and he has presented no evidence that Stewart was aware of Rios's actions or was influenced by them. *See Stratigos v. American Airlines, Inc.*, 2011 WL 1792713 at *6 (N.D. Ill. May 11, 2011) (finding no proximate cause where no reference to plaintiff's national origin was mentioned during termination proceedings and plaintiff did not present any evidence that the decisionmaker was aware of the derogatory comments made to the plaintiff.)

Cornejo's third piece of evidence concerning Defendant's failure to fire Cornejo immediately on March 2, 2007 is unpersuasive. Cornejo alleges that Defendant strung him along for several months in hopes of "lessening the blow" of being fired and avoiding a discrimination suit. However, the Seventh Circuit "has typically been skeptical of such elaborate plot theories." *Murray v. Chicago Transit Auth.*, 252 F.3d 880, 888 (7th Cir. 2001) (court rejected the plaintiff's speculation that the alleged harasser enlisted his own boss to assist in harassing the plaintiff.)

Cornejo's final piece of circumstantial evidence is that Defendant's reasons for terminating him were merely pretextual. To establish pretext, Cornejo must

show that the Defendant's articulated reasons for his termination are deliberate lies. *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006). Even if the employer's decision was ill-considered or unreasonable, no pretext exists as a matter of law if the decisionmaker honestly believed the reasons given for discharge. *Little v. Illinois Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004).

Cornejo contends that "because the reasons proffered by the Defendant for firing Mr. Cornejo lack factual foundations, a reasonable jury could find that those reasons were simply pretext for discrimination." Pl.'s Memorandum in Opposition to Def.'s Motion for Summary Judgment at 11 [Doc. No. 55]. Defendant's first articulated reason for Cornejo's termination is that Cornejo was not performing satisfactorily. It is undisputed that Cornejo arrived 35 minutes late to training one day, was sent back to Forest Glen for training twice, and was counseled by multiple supervisors for driving in an unsafe manor. Def. Facts ¶¶ 7, 13, 17. In addition, Cornejo failed to receive satisfactory ratings in his final 3 training sessions. Given the information that Stewart had at the time of Cornejo's termination, it is reasonable that she believed that Cornejo was not performing satisfactorily. *See Flores v. Preferred Technical Group*, 182 F.3d 512, 516 (7th Cir. 1999) ("the more objectively reasonable a belief is, the more likely that it will seem that the belief was honestly held."). Cornejo presents no compelling circumstantial evidence that this articulated reason was a deliberate lie.

Defendant's second reason for termination is that Cornejo was argumentative and insubordinate. Cornejo acknowledges that Stewart was informed by Woolfolk that Cornejo resisted any attempts to be instructed on CTA bus operations. Furthermore, Stewart contends that Cornejo acted in an insubordinate manner towards her. Although Cornejo denies this, his own perception of his actions is not sufficient to defeat summary judgment. *See Karazanos v. Navistar Intern. Transp. Corp.*, 948 F.2d 332, 338 (7th Cir. 1991) ("[i]t is the perception of the decisionmaker which is relevant.").

Ultimately, Cornejo's circumstantial evidence fails to create the "convincing mosaic" necessary to establish that discrimination was the direct reason for Cornejo's termination. Therefore, he has failed to prove his claims of discrimination through the direct method.

### B. The Indirect Method

Although Cornejo was unsuccessful with the direct method of proof, Cornejo may still avoid summary judgment if he is able to prove a *prima facie* case of discrimination under the indirect method. To establish a *prima facie* case of discrimination, Cornejo must show that (1) he was a member of a protected class, (2) he was meeting the employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) other, similarly situated employees who are not members of Cornejo's protected class were treated more favorably than

him. *See McDonnell Douglas Corp.*, 411 U.S. at 804-05; *Palucki v. Gooding Rubber Co.*, 221 F.3d 1003, 1012 (7th Cir. 2000). The parties agree that Cornejo is in a protected class on the basis of his national origin and that his termination was an adverse employment action. The parties dispute whether Cornejo has identified any similarly situated employees and whether he was meeting legitimate employment expectations.

Cornejo contends that he meets the fourth prong of the *prima facie* case because his entire training class was similarly situated and no one else from that class was fired. However, Cornejo has failed to meet his burden of properly identifying similarly situated employees.

A plaintiff can raise the inference of discrimination by identifying a similarly situated employee outside the protected class who was treated more favorably by the employer. *Ford v. Minteq Shapes and Services, Inc.*, 587 F.3d 845, 848 (7th Cir. 2009); *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618-19 (7th Cir. 2000). In order to meet the similarly situated requirement, the plaintiff must show that "there is someone who is directly comparable to him in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). Relevant factors can include whether the employees had the same supervisor, were subject to the same standards, had comparable experience, education, qualifications, and had similar performance problems. *Id.*; *Radue*, 219 F.3d at 617-19. Overall, however, the similarly situated requirement should be applied flexibly, utilizing common-sense.

*See Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827, 831 (7th Cir. 2007); *Goodwin v. Bd. of Trs. of Univ. of Ill.*, 442 F.3d 611, 619 (7th Cir. 2006).

Cornejo correctly contends that the other members of his training class meet some of the similarly situated factors. All the probationary bus operators had the same supervisor (Ms. Stewart) and were subject to the same CTA standards. However, Cornejo has not submitted adequate evidence showing that the other bus operators had comparable experience, education, qualifications and performance problems.

Apart from relying on the training class members as a whole,[7] Cornejo has not specifically identified any similarly situated employee. Without knowing who the employees are, the Court is not able to determine if they had the same performance problems as Cornejo such as arriving late to work, driving too fast while attempting to turn, failing to cover the brakes, departing a bus stop with bus doors open, and inaccurately judging distances between objects. The Court also does not know if those employees received satisfactory ratings from instructors or were

---

[7]Cornejo attempts to establish commonality with his comparators by putting forth evidence of discussions with those in his training class. Cornejo learned that: (1) many people in his class did not have a commercial driver's license, (2) many people in his class did not have prior experience in the realm of commercial driving, and (3) other members of his class were reprimanded for leaving the door open when departing from a stop, for failing to cover the brake, and for arriving late. This evidence fails to establish commonality for two reasons. First, the statements are inadmissible hearsay which a party cannot rely upon to defeat summary judgment. Fed. R. Evid. 801(c); *Bombard v. Ft. Wayne Newspapers,* 92 F.3d 560, 562 (7th Cir. 1996) ("a party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment."). Second, this evidence still does not establish that another employee experienced the same performance related issues as Cornejo.

16

sent back to remedial training. Although it is not necessary to establish a "one-to-one mapping between employees," there needs to be "enough common features between individuals to allow [for] a meaningful comparison." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) ("the purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable: complaints about discrimination."). In the current case, the only common features are that the bus operators were subject to the same supervisor and standards. This, by itself, is not sufficient to allow for a meaningful comparison. *See Smith v. Stratus Computers, Inc.*, 40 F.3d 11, 17-18 (holding that plaintiff did not present sufficient evidence that other executives were similarly situated to her since there was no indication that their job changes were a result of poor performance).

Not only does Cornejo fail to identify any similarly situated employees, but he also fails to produce evidence to show that the comparators outside the protected group actually received better treatment. Cornejo relies on mere speculation that he was the only one fired, and as stated earlier, speculation is not enough to defeat a summary judgment motion. *Grube v. Lau*, 257 F.3d 723, 730 (7th Cir. 2001). Cornejo's failure to meet this fourth element is, by itself, grounds for entering judgment in favor of the Defendant. *Bio v. Federal Express Corp.*, 424 F.3d 593, 596 (7th Cir. 2005). As a result, the Court need not address the other factors.

Because a plaintiff must present sufficient evidence for every element of a *prima facie* discrimination case, and since Cornejo has failed to meet this burden, summary judgment must be granted for the Defendant.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. No. 50] is granted. Accordingly, judgment will be entered in favor of the Defendant and against the Plaintiff on all claims.

SO ORDERED.                                      ENTERED:

DATE:  August 17, 2011
                                                 _____
                                                 **HON. MARIA VALDEZ**
                                                 **United States Magistrate Judge**